■ EAST NEW YORK SAVINGS BANK, Respondent, v REPUBLIC REALTY MORTGAGE CORPORATION, Appellant.—In an action to recover damages for breach of contract, defendant appeals from an order of the Supreme Court, Kings County, dated October 12, 1977, which denied its motion to dismiss the complaint on the grounds of lack of personal jurisdiction and *forum non conveniens.* Order affirmed, with $50 costs and disbursements. The Frontier Towers Corp. planned to construct a 56-story apartment building in Chicago, Illinois. In February, 1970 defendant obtained a commitment from the Federal Housing Administration (F. H. A.) to insure the construction mortgage thereon. Defendant subsequently assigned that commitment to the Continental Illinois National Bank and Trust Company of Chicago. Defendant then sought to obtain construction and permanent mortgage financing

for the project on behalf of Frontier Towers Corp. and retained the Pressprich Corp., a New York corporation, to secure such financing. In letters between Pressprich and defendant, Pressprich stated that it was acting with defendant's exclusive authorization, and as its sole agent. Pressprich ultimately obtained commitments from 20 New York savings banks to participate in the construction and permanent mortgage financing. Plaintiff participated in the permanent financing on behalf of the other New York banks by granting the permanent 40-year mortgage loan in its own name. It was a stipulated condition of the permanent mortgage offering to the New York banks that defendant service the long-term mortgage. Defendant would receive a fee therefor of one percent of the loan proceeds. Plaintiff executed. the servicing agreement with defendant on November 16, 1971. The agreement recited that it had been executed in New York and was to be construed according to New York law, although it had been executed by defendant in Chicago. It also recited that defendant had participated in the negotiation of the sale of the permanent mortgage to plaintiff. When Frontier Towers Corp. did not pay the February, 1975 installment of principal and interest, despite plaintiff's demand therefor, plaintiff accelerated payment of the mortgage debt, pursuant to the terms of the mortgage, and filed notice of default with the F. H. A. On March 10, 1975 the F. H. A. determined that an overpayment of $190,408.88 in mortgage insurance premiums had been made to it, and issued a refund check therefor to defendant, the servicing agent. On March 15, 1975 defendant allegedly issued its own check in the amount of the refund to the Frontier Towers Corp., although the mortgage was in default. Plaintiff thereafter assigned the mortgage to the F. H. A. and received the balance due, less the amount of the refund check. It then commenced this action in New York to recover the amount of the refund and served defendant in Chicago. Plaintiff alleges that jurisdiction existed under CPLR 302 by reason of defendant's transaction of business and commission of tortious acts in New York. Defendant moved to dismiss on the grounds of lack of personal jurisdiction and *forum non conveniens.* On appeal, defendant argues that Pressprich had not acted as its agent, but as an independent contractor in obtaining financing from New York banks. Even if it were to be found that Prissprich had acted as its agent, defendant contends, the breach of the servicing agreement did not arise out of Pressprich's activities in New York. Plaintiff alleges that all of the negotiations relating to construction and permanent financing had been conducted in New York by Pressprich, as defendant's agent, and the New York banks. Plaintiff also alleges that some of the negotiations relating to the servicing agreement had been conducted between itself and Pressprich in New York, and that defendant had personally appeared at the closing of the permanent mortgage in New York. Where a party, such as plaintiff, sues a nondomiciliary and premises personal jurisdiction upon the activity of the nondomiciliary's agent in New York, it is necessary to determine whether the representative conducted purposeful activity in New York for the benefit of the nondomiciliary (see *Elman v Belson,* 32 AD2d 422). The activities of the representative in New York will be attributed to the nondomiciliary if it requested the performance of those activities in New York, and those activities benefit it, regardless of whether the representative acted as an agent or an independent contractor (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C302:3, p 26 [1977–1978 cumulative annual pocket part]). Defendant retained Pressprich to obtain the construction and permanent financing for the project, and all of the negotiations relating thereto were conducted in

New York. It is clear that defendant benefited from Pressprich's activity on its behalf as the permanent mortgage offering stipulated that the lenders would appoint defendant as servicing agent. Accordingly, Pressprich's activity in New York must be attributed to defendant. In determining whether the cause of action arose out of these activities, the entire transaction must be considered (see *Collateral Factors Corp. v Meyers*, 39 AD2d 27, 29). Because the permanent mortgage offering stipulated that defendant would act as servicing agent, the permanent mortgage commitments secured by Pressprich from the New York banks incidentally appointed defendant as servicing agent. Defendant does not deny plaintiff's allegation that it had been represented in New York at the closing of the permanent mortgage. Defendant's performance as servicing agent commenced upon that closing. We conclude that Pressprich transacted business in New York on defendant's behalf, and that defendant itself transacted business in New York at a crucial stage in the contractual relationship between the parties (see *Hi Fashion Wigs v Hammond Adv.*, 32 NY2d 583, 586). The cause of action arose out of those activities. Hence, New York has personal jurisdiction over the defendant (see CPLR 302, subd [a], par 1). Defendant was intimately involved in this project from beginning to end. Since it relied upon the financial resources of this State's institutions to accomplish its goals, it does not seem unfair or burdensome to require it to defend an action in New York, which is related to that project. Both parties' nexus with New York with regard to the subject matter of this action is sufficient for our courts to retain jurisdiction (see CPLR 327; *Income Fund of Boston v Vahlsing*, 49 AD2d 724). Shapiro, J. P., Cohalan, Margett and O'Connor, JJ., concur.