KERAMCHEMIE GmbH, Plaintiff,

v.

KERAMCHEMIE (CANADA) LIMITED, Defendant.

No. 91 Civ. 0359 RPP.

United States District Court, S.D. New York.

Aug. 9, 1991.

---

Toren, McGeady, Stanger, Goldberg & Kiel, New York City by Samuel B. Mayer and David Toren, for plaintiff.

Morvillo, Abramowitz, Grand, Iason & Silberberg, New York City by Michael C. Silberberg and Rudnick & Wolfe, Chicago, Ill. by Gary M. Sircus, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Keramchemie (Canada) Limited ("KCC") moves pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure to dismiss the action brought by plaintiff Keramchemie GmbH ("KCH") for lack of personal jurisdiction and improper venue. For the reasons stated below, the action is stayed pending resolution of the related action in Canada.

## BACKGROUND

Plaintiff's claims arise from defendant's allegedly improper use of the "Keramchemie" trade name and logo (referred to together as the "trademark") to which plaintiff states it owns exclusive rights. Subject matter jurisdiction lies under §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

On July 21, 1987, plaintiff registered the Keramchemie trademark in the United States Patent and Trademark Office. On March 23, 1990, defendant notified plaintiff that defendant claimed preexisting rights to use the trademark and that plaintiff's registration of the trademark constituted trade infringement under the Lanham Act and state law. Thereafter litigation between the parties was initiated in Ontario and this action followed.

Plaintiff seeks a declaration that it is the rightful and exclusive owner of the trademark; an injunction restraining defendant from using the trademark; an accounting and damages for defendant's wrongful use in the United States of the trademark; and an injunction restraining defendant from threatening and intimidating plaintiff's customers in the United States.

Plaintiff is a company organized and existing under the laws of the Federal Republic of Germany and has its principal place of business in Sienshahn, Federal Republic of Germany. Defendant is a corporation organized and existing under the laws of Ontario, Canada and has its principal place of business in Toronto, Ontario, Canada.

In 1970, pursuant to a stockholders' agreement (the "1970 Agreement") executed by plaintiff's predecessor Gewerkschaft Keramchemie, Duncan Mill Engineering ("DME"), and KCC, defendant was granted the North American rights to plaintiff's intellectual property, including the use of plaintiff's proprietary "Know How" and continued use of the name "Ker-

amchemie." [1] Defendant's Memorandum in Support of Motion to Dismiss, Exhibit 1.

On April 1, 1979, defendant entered into an agreement (the "1979 Agreement") with DME, its controlling shareholder, in which KCC granted to DME the right to use the Keramchemie knowhow and trademark in the United States. Plaintiff's Memorandum in Opposition, Exhibit. Plaintiff alleges that by entering into the 1979 Agreement, defendant violated the 1970 Agreement, specifically Section 3 which states: "KCC shall have the use of the 'Know How' ... Such use shall be limited to KCC's own use and shall not be intended for third parties." Plaintiff contends that, by virtue of KCC's grant of know-how and trademark rights to DME, the defendant's rights to use of the know-how and the "Keramchemie" trademark terminated on April 1, 1979; that the 1970 Agreement therefore has no force or effect; and that defendant's continued use of plaintiff's trademark constitutes infringement.

Defendant's motions are based on both parties being foreign corporations and that an Ontario forum selection clause is contained in the 1970 Agreement. Defendant's Memorandum in Support of Motion to Dismiss, Exhibit 1. Defendant supports its motion with an affidavit of its president stating that KCC does not do business and conducts no business activities in the State of New York. Affidavit of Hans Reicher, March 12, 1991, ¶¶ 3–15. Plaintiff responds that the forum selection clause is inapplicable because the 1970 Agreement is no longer of any force and effect and that the Keramchemie Division of defendant's controlling shareholder DME maintains a checking account and money market account with Chase Manhattan Bank in New York City through which funds have been transmitted to defendant under the 1979 Agreement. Plaintiff's Memorandum of Law in Opposition at 9. Plaintiff also argues that the Keramchemie Division is an

---

**1.** In 1966, plaintiff's predecessor Gewerkschaft Keramchemie and Duncan Mill Engineering Limited ("DME") apparently agreed to set up KCC as a private company of which they were dual owners. (The 1966 Agreement is referred to in the 1970 Agreement submitted to the

Court). The 1970 Agreement restructured the arrangement and provided, among other things, that plaintiff would transfer a 36% interest in KCC to DME, retaining a 15% interest at that time.

agent of defendant by virtue of the 1979 Agreement. Plaintiff requests discovery of defendant to carry its burden of proof on this motion.

## DISCUSSION

### I. Personal Jurisdiction

Plaintiff bases its claim of personal jurisdiction over defendant on §§ 301 and 302(a)(3) of the New York Civil Practice Law and Rules ("CPLR").

### A. New York Civil Practice Law and Rules, CPLR § 302(a)

CPLR § 302(a) provides in relevant part: As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any *non-domiciliary*, or his executor or administrator, who in person or through *an agent:*

\* \* \* \* \* \*

\* \* \* \* \* \*

3. commits a *tortious act without the state* causing *injury* to person or property *within the state* ... if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ...

\* \* \* \* \* \*

N.Y.Civ.Prac.L. & R. § 302(a)(3) (McKinney 1990) (emphasis added). Plaintiff argues that defendant's tortious acts of trademark infringement and unfair competition, as well as the threat to sue, constituted injury to plaintiff in New York; and that therefore, defendant is amenable to personal jurisdiction under CPLR § 302(a)(3). Nowhere in the complaint does plaintiff allege that plaintiff lost sales or customers in New York, or was in any other way injured here.

■ The plain meaning of § 302(a)(3) mandates that where the defendant commits a tortious act outside of the state, that act must cause injury *within* the state to create personal jurisdiction over the defendant. Such injury in the state must be direct and not remote or consequential. *Interface Biomedical Laboratories Corp. v. Axiom Medical, Inc.*, 600 F.Supp. 731 (E.D.N.Y.1985). In general, "[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990) (quoting *Carte v. Parkoff*, 152 A.D.2d 615, 616, 543 N.Y.S.2d 718, 719 (1989) (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (1987)), *cert. denied*, — U.S. —, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). *See also Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir.1975) (holding that loss of profits to plaintiff's New York stockholders was too remote and consequential an injury to satisfy § 302(a)(3)); *American White Cross Laboratories, Inc. v. H.M. Cote, Inc.*, 556 F.Supp. 753, 759 (S.D.N.Y.1983) (dismissing the complaint where "no direct interference by [defendant] with White Cross's customers or business in New York").

■ Plaintiff has not shown that it has lost any customers or business or has in any other way been injured in New York as a result of defendant's alleged tortious acts. Thus plaintiff has failed to establish that defendant has met the requirements of § 302(a)(3). Because the lack of injury within the state disposes of this issue, it is unnecessary to consider the other elements of § 302(a)(3). Accordingly, plaintiff has not shown that personal jurisdiction may be asserted over defendant under CPLR § 302(a)(3).

### B. New York Civil Practice Law and Rules § 301 ("CPLR § 301")

New York's general jurisdictional statute, CPLR § 301, provides: "A court may exercise such jurisdiction over persons, property, or status as might have been

exercised heretofore." N.Y.Civ.Prac.L. & R. § 301 (McKinney 1990). Section 301 "will in no case detract from the jurisdiction that might have been acquired before the effective date of the CPLR." McLaughlin, Practice Commentaries C301:1 (McKinney 1990).

"Under section 301, an entity is amenable to jurisdiction in New York if it is 'doing business' in New York so as to establish its presence in the state." *Mareno v. Rowe, supra,* 910 F.2d at 1046. In *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 77 N.Y.2d 28, 33, 565 N.E.2d 488, 490, 563 N.Y.S.2d 739, 741 (1990), upon certification of the question by the Second Circuit, the court articulated the test for finding personal jurisdiction over foreign corporations:

> A foreign corporation is amenable to suit in New York courts under CPLR 301 if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted. The test for 'doing business' is a 'simple [and] pragmatic one,' which varies in its application depending on the particular facts of each case.

*Id.* at 33, 565 N.E.2d 488, 563 N.Y.S.2d 739 (quoting *Bryant v. Finnish Nat'l Airline,* 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441, 260 N.Y.S.2d 625, 629 (1965)). "The court must be able to say from the facts that the corporation is 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Id.* (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)). *Accord, Alexander & Alexander Servs., Inc. v. Lloyd's Syndicate 317,* 925 F.2d 44 (2d Cir.1991).

Plaintiff does not claim that defendant itself is doing business in New York. Rather, it bases its claim that this Court has personal jurisdiction over KCC on the activities of the Keramchemie Division of DME, which has two accounts with a New York bank. Plaintiff claims that DME is an agent or "alter ego" of KCC.[2] Plaintiff argues in the alternative that for jurisdictional purposes, even absent a formal relationship, DME is an agent of defendant or an independent contractor, and that DME's activities may in either case be attributed to defendant because the defendant requested performance of, exercised performance over, and benefited from the activities of the Keramchemie Division of DME.

"The activities of the representative in New York will be attributed to the nondomiciliary if it requested the performance of those activities in New York, and those activities benefit it, regardless of whether the representative acted as an agent or an independent contractor." *East New York Sav. Bank v. Republic Realty Mortg. Corp.,* 61 A.D.2d 1001, 1002, 402 N.Y.S.2d 639, 641 (2d Dep't 1978). *See Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 465, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195, 199 (1988). Both cases, cited by plaintiff, are based not on the application of CPLR § 301, as plaintiff would have it, but are based on CPLR § 302(a)(1).[3] Nevertheless, under *Kreutter,* although plaintiff need not prove that a formal agency relationship existed between defendant and DME's Keramchemie Division, plaintiff must still establish that the New York bank accounts of DME's Keramchemie Division were maintained with the "knowledge and consent of the . . . defendant[ ]." *Kreutter,*

---

2. The provisions of the 1979 Agreement recite that DME is a shareholder of defendant KCC; that DME is the sole source of outside financing of defendant KCC; that DME shall pay defendant KCC a fee of 2% of the gross sales of its "Keramchemie Division", ¶ 3; and that the functions of DME will be phased in at such times as the parties deem practical, ¶ 10. Plaintiff's Memorandum of Law in Opposition, Exhibit. Plaintiff's contention that DME is the agent of defendant KCC, however, is contradicted by a clause of the 1979 Agreement: "Neither this agreement nor any provision hereunder shall

constitute DME the agent of KCC, it being the intention that the relationship between DME and KCC arising herefrom shall be that of independent contractors." *Id.,* ¶ 6.

3. CPLR § 302(a)(1) provides that a court in New York may exercise personal jurisdiction over a "non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services within the state . . ."

*supra*, 527 N.Y.S.2d at 199, 522 N.E.2d at 44.[4]

■ In any event, plaintiff must also show that in fact this Court has personal jurisdiction over the Keramchemie Division of DME, KCC's alleged agent or alter ego. While bank accounts have jurisdictional significance,[5] "New York courts have consistently held ... that the maintenance of local bank accounts does not, without more, amount to 'doing business' in the state." *Grove Valve & Regulator Co. v. Iranian Oil Servs., Ltd.*, 87 F.R.D. 93, 95 (S.D.N.Y.1980). *See also Colson Servs. Corp. v. Bank of Baltimore*, 712 F.Supp. 28, 32 (S.D.N.Y.1989) (where defendant's predecessor had no role in choosing the location of bank accounts, defendant's maintenance of those accounts in New York did not constitute "doing business"); *National Am. Corp. v. Federal Republic of Nigeria*, 425 F.Supp. 1365, 1369 (S.D.N.Y.1977) ("The isolated act of main-taining bank accounts here has been held not to constitute doing business"); *Landoil Resources v. Alexander & Alexander Servs., Inc.*, *supra*, 77 N.Y.2d at 35, 565 N.E.2d 488, 563 N.Y.S.2d 739 (bank account alone does not establish that third-party defendant does business in New York on a continuous and systematic basis). Thus plaintiff must show that DME's Keramchemie Division bank accounts at Chase Manhattan Bank and other activities in New York suffice for the Court to find that the Division was "doing business" in New York *and* that its bank accounts were maintained or activities conducted with the knowledge and consent of KCC.[6]

■ Plaintiff argues that it needs further discovery to meet this burden. The close relationship between DME and KCC creates a possibility that plaintiff might succeed in its discovery but the Court is not persuaded that such discovery should be permitted at this time.[7]

---

**4.** Under § 301, the business activities of an independent contractor in New York are only attributable to an out-of-state defendant for jurisdictional purposes if the foreign entity, for example, exercises parent/subsidiary control over the allegedly independent contractor or if the activities of the independent agency are so much a part of the foreign entity's corporate function, and are so systematic and continuous, that they warrant finding that the out-of-state entity is "doing business" in New York through the in-state contractor. *Laufer v. Ostrow*, 55 N.Y.2d 305, 311, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 459 (1982). Plaintiff has failed to make such a showing.

**5.** "The New York courts, in applying the pragmatic test for § 301 jurisdiction have focused upon factors including: the existence of an office in New York; the solicitation of business in the state; *the presence of bank accounts* and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985) (emphasis added) (citations omitted). Although plaintiff has established the maintenance of bank accounts by the Keramchemie Division of DME, it has not established any of the other factors.

**6.** The passage of funds through the two bank accounts in New York, held by DME's Keramchemie Division, may not suffice to show that this Court had personal jurisdiction over that Division under CPLR § 302(a)(1), *National Am. Corp.*, *supra*, 425 F.Supp. at 1370, and thus does not show, by extension, such personal jurisdiction over KCC.

**7.** Plaintiff has not established that defendant KCC or DME had sufficient minimum contacts with this state to justify the exercise of personal jurisdiction over KCC without offense to due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Nor has plaintiff shown that the defendant has engaged in "some act by which [it] purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *see also Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (a foreign defendant's mere awareness that the components it manufactured, sold, and delivered outside the United States would reach the forum state via the stream of commerce was insufficient to constitute minimum contacts). Nor has plaintiff shown that it itself has any contact with this state such that New York would have an interest in providing it a means of redress. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 222–24, 78 S.Ct. 199, 200–02, 2 L.Ed.2d 223 (1957). *See Kreutter, supra*, 71

**624**

*II. Venue*

 Defendant also moves to dismiss this case for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. If the 1970 Agreement is found to be of force and effect, the plain meaning of the forum selection clause establishes that the present dispute should be tried in Canada. Section 9 of the 1970 Agreement provides: "In case of dispute Ontario law shall apply and any legal action shall be tried in Toronto." Since the 1970 Agreement was a contract for trademark licensing, "dispute" must refer to any disagreement over whether either party breached its duty concerning the use of the trademark. The present case, which concerns defendant KCC's alleged violation of the license by granting it to a "third party," falls well within the field of disputes contemplated by the forum selection clause.

Ever since the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the courts have upheld forum selection clauses unless enforcement would be unreasonable. In *Bremen,* the Court held that "the forum clause should control absent a strong showing that it should be set aside" and that the clause will be enforced unless the party resisting enforcement can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen, supra,* 407 U.S. at 15, 92 S.Ct. at 1916. *See* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3803.1 at 19 (2d ed. 1986). Since enforcement of the forum selection clause would not be unreasonable or unjust in terms of the governing law, *see Furbee v. Vantage Press, Inc.,* 464 F.2d 835, 837 (D.C.Cir.1972), convenience for parties, prospective witnesses, or obtaining evidence, *see Anastasi Bros. Corp. v. St. Paul Fire & Marine Ins. Co.,* 519 F.Supp. 862 (E.D.Pa.1981), public policy, *see Hoffman v. Burroughs Corp.,* 571 F.Supp. 545 (N.D.Tex.1982), or availability of remedies, *id.* at 549 n. 4, it would not be unreasonable to enforce the forum selection clause in the present case. Accordingly, if the 1970 Agreement is found to be of force and effect, this case should be heard in Toronto, Ontario, Canada, rather than in New York.

Whether the 1970 Agreement is of any force and effect is the subject of the Canadian litigation. If the 1970 Agreement is still of force and effect, the Ontario forum selection clause governs and defendant is entitled to use the Keramchemie know-how and trademark in North America. If the 1979 Agreement constitutes a breach of the 1970 Agreement, then plaintiff's claims against defendant should lie. Both parties are foreign corporations; the 1970 Agreement contains a Toronto, Ontario, forum selection clause; and the plaintiff does not dispute that the pending litigation in Ontario is over the parties' respective North American rights to use the Keramchemie trademark. Accordingly, at this time this Court will not authorize plaintiff to conduct discovery here to ascertain personal jurisdiction over defendant until the parties' rights have been determined in the Canadian action.

**CONCLUSION**

Plaintiff has failed to establish personal jurisdiction under CPLR § 302(a)(3). Discovery to ascertain whether personal jurisdiction exists under CPLR § 301 will not be authorized until the litigation in Canada is resolved. Accordingly, this action is stayed pending resolution of the parties' contract and trademark action in Canada.

IT IS SO ORDERED.

N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195, for how CPLR §§ 301 and 302 relate to analysis of minimum contacts.