**5–STAR MANAGEMENT, INC., Plaintiff,**

**v.**

**John A. ROGERS, Albuquerque Allsuite Associates, Alfred Denendorf, Associated Plastic Surgeons & Consultants, P.C., Schenck Fuels, Inc., Incorporated Village of the Branch, Huntington Hospital Association, The First National Bank of Chicago, Chemical Bank, "John Doe #1" To "John Doe #50," Both Inclusive, The Names Of The Last 50 Defendants Being Fictitious, Said Defendants' True Names Being Thereby Intended To Designate Parties With Liens That Are**

**Subject And Subordinate To The Lien Of The Mortgage Being Foreclosed Herein And Tenants, Lessees, Or Occupants Of Portions Of The Mortgaged Premises Described In The Complaint, Defendants.**

No. 95–CV–3121 (JS) (ETB).

United States District Court,
E.D. New York.

Sept. 25, 1996.

Joseph J. Ortego, Kevin McElroy, Rivkin, Radler & Kremer, Uniondale, NY, for plaintiff.

Mark C. Dow, Mark C. Dow, P.A., Albuquerque, NM, Lawrence S. Rosen, Kupfer & Rosen, New York City, Christopher P. Bauman, Thomas & Bauman, P.C., Albuquerque, NM, for defendants.

### MEMORANDUM AND ORDER

SEYBERT, District Judge:

This is a mortgage-foreclosure action, based upon diversity jurisdiction, that has been commenced by plaintiff 5–Star Management, Inc. ["5–Star"] to enforce its rights pursuant to a mortgage, given by defendant John A. Rogers, that plaintiff holds on certain real property located in East Hampton, New York. As a result of the default of codefendant Albuquerque Allsuite Associates ["Allsuite"] on its obligations pursuant to a promissory note that is secured by Rogers' East Hampton property, plaintiff 5–Star brought this action to foreclose on the mortgage securing said property. In addition to defendants Rogers and Allsuite, the complaint names as defendants a number of persons and entities that have interests in the East Hampton property.

Pending before the Court are two separate motions. First, defendant Allsuite moves to dismiss this action against it for lack of personal jurisdiction. Second, defendants Rogers and Allsuite move to dismiss the complaint for failure to state a cause of action, or alternatively to transfer this case to the United States District Court for the District of New Mexico.

### FACTUAL BACKGROUND

On or about August 13, 1984, for value received, Albuquerque Allsuite Partners, Ltd. and Allsuite Management Company duly executed and delivered to Albuquerque Federal Savings and Loan Association ["AFS & L"] a demand note whereby they promised to pay the principal sum of $400,000.00 with interest thereon. Compl. ¶ 23. The remaining principal on this note was later restructured pursuant to a Master Loan Agreement dated January 27, 1988. Compl. ¶ 28, Ex. D. As collateral security for the payment of the demand note, Rogers executed and delivered to AFS & L a mortgage dated August 13, 1984, whereby he mortgaged his East Hampton property in fee [the "Mortgage"]. Compl. ¶ 24, Ex. B. The note and Mortgage were given to AFS & L as constituent parts of a Loan Consolidation Agreement dated August 13, 1984 between AFS & L and Allsuite. Compl. ¶ 26.

In 1988, Allsuite duly executed and delivered to AFS & L a promissory note [the "Note"] whereby it promised to pay the principal sum of $520,000.00 with interest thereon. Compl. ¶ 27, Ex. C. The Note was given pursuant to the terms of a Master Loan Agreement (restructuring and extending the outstanding indebtedness) dated January 27, 1988, and was secured by the Mortgage. Compl. ¶ 28, Ex. D.

On or about July 18, 1991, for purposes of modifying and restating the notes and mortgages described herein, defendant Allsuite executed, duly acknowledged and delivered to the Resolution Trust Corporation ["RTC"], as Receiver for ABQ Federal Savings Bank, successor in interest to AFS & L, an Agreement Modifying and/or Restating Notes, Loan Agreement, Mortgage, Security Agreement and Deeds of Trust [the "Modification Agreement"] whereby said notes and mortgages were modified and restated. Compl. ¶ 29, Ex. E. The Modification Agreement specifically provided that all state-law issues of construction with respect to the documents thereby modified (including the Mortgage) would be determined under the laws of the State of New Mexico. Compl.Ex. E ¶ 27, at 23.

On or about July 18, 1991, as part of the consideration for the making of the Modification Agreement, Rogers duly executed, acknowledged and delivered to RTC an Unconditional Continuing Guaranty [the "Guaranty"] wherein he unconditionally guaranteed the "full and prompt payment, performance and discharge (whether by acceleration or otherwise) of Three Million

Dollars ($3,000,000.00) of the total of any and all present and future indebtedness, obligations and liabilities of [Allsuite]...." Compl. ¶ 32, Ex. G ¶ 1, at 1.

By Assignment of Mortgage dated January 11, 1995, RTC, for value received, assigned its interest in and to the Mortgage to plaintiff. Compl. ¶ 31, Ex. F. In addition, by Quitclaim Assignment and Assumption of Rights Under Agreement, dated January 11, 1995, RTC assigned its interest in and to the Guaranty to plaintiff. Compl. ¶ 33, Ex. H.

Defendant Allsuite did not comply with the terms and conditions of the applicable note as it failed to pay all unpaid principal, interest, and other fees and charges due and owing on the maturity date of the note, August 1, 1992. Compl. ¶ 36. This default continued for a substantial period of time through and including January 11, 1995, the date that RTC assigned the Mortgage to plaintiff.

By letter dated May 18, 1995, plaintiff 5–Star gave defendants Rogers and Allsuite written notice of the events of default and demanded that said default be remedied by June 5, 1995. Compl. ¶ 39, Ex. I. Thereafter, by letter dated June 6, 1995, 5–Star gave written notice of its demand for payment and declared the entire amount secured by the Mortgage immediately due and payable. Compl. ¶ 40, Ex. J. As of June 5, 1995, the balance of principal and interest and other charges due and owing, and secured by the Mortgage, totalled $477,500.00. Compl. ¶ 41. On August 3, 1995, plaintiff filed the instant mortgage-foreclosure action in this Court.

The Court notes that the complaint does not specifically allege that plaintiff is the holder of the promissory note secured by the Mortgage.

Pending before the Court are two separate motions. First, defendant Allsuite moves pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss this action against it for lack of personal jurisdiction. Second, defendants Rogers and Allsuite move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure

to state a claim on the grounds that, under New Mexico law, the mortgage that plaintiff holds is unenforceable because plaintiff is not the holder of the underlying promissory note secured by said mortgage. With respect to this second application, the parties do not dispute that New Mexico law applies to this case and that the Supreme Court of New Mexico has not spoken concerning this issue. In the alternative, Rogers and Allsuite seek to transfer this case to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

**I. Allsuite's Motion to Dismiss for Lack of Personal Jurisdiction**

Defendant Allsuite, a New Mexico joint venture, moves pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss plaintiff's complaint against it for lack of personal jurisdiction. In support of its application, Allsuite asserts that the complaint fails to make a prima facie showing that this Court has personal jurisdiction over it because Allsuite conducts no business in New York and has no contacts with New York, and moreover because the underlying loan transactions were negotiated, executed and delivered in New Mexico. Plaintiff, in turn, contends that this Court has personal jurisdiction over Allsuite on the basis that Rogers, Allsuite's general partner, used real property located in New York State on Allsuite's behalf while acting as Allsuite's agent. More specifically, plaintiff contends that by using real property located in New York [the "New York Property"] as collateral to secure the loan made to Allsuite that is the subject of this action, Allsuite, through the acts of its agent Rogers, rendered itself amenable to suit on causes of action stemming from that loan.

"In order to defeat a motion to dismiss for lack of personal jurisdiction ..., plaintiff must make a prima facie showing of facts that, if credited by the trier of fact, would suffice to establish jurisdiction over the defendant." [1] *Bicicletas Windsor, S.A. v.*

1. "If, however, the district court holds an evidentiary hearing, the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n. 3 (2d Cir.1994) (citing *CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d

*Bicycle Corp.,* 783 F.Supp. 781, 783 (S.D.N.Y. 1992); *see Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994); *Volkswagen De Mexico, S.A. v. Germanischer Lloyd,* 768 F.Supp. 1023, 1027 (S.D.N.Y. 1991). In making this determination, "[a]ll pleadings and affidavits must be construed in the light most favorable to plaintiff[ ] and all doubts resolved in [its] favor." *Volkswagen De Mexico,* 768 F.Supp. at 1027.

The determination of whether the Court has personal jurisdiction over Allsuite involves two distinct steps. First, the acts of the non-domiciliary defendant must be within the scope of New York's long-arm statute. Second, personal jurisdiction must comport with the Due Process Clause of the Fifth and Fourteenth Amendments. *See Marriott PLP Corp. v. Tuschman,* 904 F.Supp. 461, 464 (D.Md.1995), *aff'd,* No. 96–1659, 1996 WL 534421 (4th Cir. Sept. 19, 1996). The Court will examine each of these issues *seriatim.*

### A. *Analysis Under CPLR § 302*

New York's long-arm statute is set forth in N.Y.Civ.Prac.L. & R. [CPLR] § 302. This statute provides, in pertinent part:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:
>
> (4) owns, uses or possesses any real property situated within the state.

CPLR § 302(a)(4). In view of the above statutory language, two questions emerge. First, did Allsuite own, use, or possess real property situated in New York? Second, did the cause of action arise from said real property situated in New York?

▮▮▮▮ Under the circumstances of this case, in order to determine whether Allsuite used real property located in New York, it first must be shown that John A. Rogers acted as an agent for Allsuite in connection with his encumbering of his New York Property with a mortgage as collateral to secure a loan that was made to Allsuite. "Although

the New York courts have not marched to the beat of a single drummer when construing section 302, they have customarily interpreted the term 'agent' fairly broadly...." *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir.1981). "To constitute an agent for the purposes of [CPLR § 302], the alleged agent must have engaged in purposeful activities in [New York] State for the benefit of and with the knowledge and consent of the non-domiciliary and the non-domiciliary must exercise some element of control over the agent." *Teachers Ins. and Annuity Ass'n v. Butler,* 592 F.Supp. 1097, 1101 (S.D.N.Y. 1984); *see CutCo Indus. v. Naughton,* 806 F.2d 361, 366 (2d Cir.1986); *Mayes v. Leipziger,* 674 F.2d 178, 181–82 (2d Cir.1982); *Grove Press,* 649 F.2d at 122; *East New York Savings Bank v. Republic Realty Mortgage Corp.,* 61 A.D.2d 1001, 402 N.Y.S.2d 639, 641 (2d Dep't 1978). Moreover, "the formal trappings of agency are not as important as the realities of the situation." *Teachers Ins.,* 592 F.Supp. at 1102; *see Mayes,* 674 F.2d at 181–82; *New York Marine Managers, Inc. v. M.V. "TOPOR–1",* 716 F.Supp. 783, 785 (S.D.N.Y.1989).

Rogers is the acting general partner for Allsuite. By virtue of his position as general partner, Rogers participated fully in the profits, losses and management of the joint venture. In analyzing the realities of the situation, it appears that Rogers purposefully used his real property located in New York to secure a loan made to Allsuite, and that such actions were done with the knowledge and consent of Allsuite. Indeed, had Rogers' New York Property not been employed as collateral, Allsuite would not have been able to obtain the subject financing. The realities of the situation therefore suggest that Allsuite had knowledge of Rogers' actions, consented to his actions, and benefitted from his actions.

Plaintiff also has made a prima facie showing that Allsuite exercised control over Rogers' actions. "Under traditional agency law, joint participation in a partnership or joint venture establishes 'control' sufficient to

Cir.1986)) (other citation omitted). In the instant case, because the Court has not held an evidentiary hearing, plaintiff is only required to

make a prima facie showing of personal jurisdiction over Allsuite.

make each partner or joint venturer an agent of the others." *CutCo Indus.*, 806 F.2d at 366. Because Rogers was the acting general partner for the joint venture, his contacts with New York in the course of doing business for the joint venture are properly attributed to Allsuite. *See id.*

In addition, the Court finds that the present litigation arises from Allsuite's use of the New York Property. In this regard, plaintiff brings this action to foreclose on a mortgage that secured various loans made to Allsuite. According to the complaint, Allsuite's default on a loan secured by the New York Property directly resulted in 5–Star's exercise of its right of foreclosure pursuant to the applicable loan agreement. Thus, this Court concludes that the present action arises from real property situated in New York which Allsuite used. Accordingly, plaintiff has succeeded in making a prima facie showing of personal jurisdiction over Allsuite under CPLR § 302(a)(4).

### B. *Due Process Analysis*

Plaintiff also has succeeded in making a prima facie showing that this Court's exercise of personal jurisdiction over Allsuite is consistent with the Due Process Clause of the Fifth and Fourteenth Amendments. Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Where, as in the instant case, specific jurisdiction is asserted, this Court[2] is allowed "to exercise 'personal jurisdiction over a defendant in a suit arising [out of] or related to the defendant's contacts with the forum.'" *Loral Fairchild Corp. v. Victor Co.*, 803 F.Supp. 626, 631 n. 10 (E.D.N.Y. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985)). This condition is met here because this action arises from Allsuite's single contact with New York State, specifically, the use of real property located in New York State.

In addition, defendant Allsuite's contacts with New York, through the acts of its agent Rogers, are such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Indeed, Allsuite purposefully availed itself of the benefits and protection of the laws of New York by using the New York Property to secure a note, the obligations and remedies of which are the subject of this action. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568). Accordingly, Allsuite's joinder as a defendant in this action is consistent with due process.

## II. Rogers' and Allsuite's Motion to Dismiss For Failure to State a Cause of Action

Defendants Rogers and Allsuite move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint against them for failure to state a claim on the grounds that, under New Mexico law, the mortgage that plaintiff holds is unenforceable because plaintiff is not the holder of the underlying promissory note secured by such mortgage. With respect to this issue, the parties do not dispute that New Mexico law applies to this case[3] and that the Supreme Court of New Mexico has not spoken concerning this issue.

### A. *Standards Governing Rule 12(b)(6) Motion to Dismiss and Judicial Notice*

A district court should grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if " 'it is clear that no relief could be granted under any set

---

**2.** A federal district court has personal jurisdiction over a defendant who could be subjected to the jurisdiction of a state court in the state in which the district court is located. *See* Fed. R.Civ.P. 4(k)(1)(A); *Marriott PLP Corp.*, 904 F.Supp. at 464.

**3.** As previously discussed, the Modification Agreement specifically provided that all state-law issues of construction with respect to the documents thereby modified (including the Mortgage) would be determined under New Mexico law. *See* Compl.Ex. E ¶ 27, at 23.

of facts that could be proved consistent with the allegations.'" *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.,* 492 U.S. at 249, 109 S.Ct. at 2906; *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure).

In connection with their motion to dismiss, defendants Rogers and Allsuite have attached pleadings, motion papers, and a transcript from other judicial proceedings. In this regard, the Court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, that two related actions have been commenced in respect of the same underlying obligation that is secured by the mortgage in question. First, on November 7, 1995 (more than three months after the instant action was commenced), Rogers and Allsuite filed a declaratory-judgment suit in the United States District Court for the District of New Mexico against 5–Star with respect to the mortgage in question in the present action. *See* Rogers Aff.Ex. A (copy of complaint). Upon 5–Star's motion, *see* Dow Aff.Ex. C, the New Mexico federal district court determined that it lacked personal jurisdiction over 5–Star, and transferred said case to the Eastern District of New York pursuant to 28 U.S.C. § 1631. *See Rogers v. 5–Star Management, Inc.,* Civ. No. 95–1331 BB/WWD, at 1, —— F.Supp. —— [1996 WL 673491] (D.N.M. May 20, 1996).

Second, an action is pending in New Mexico state court, Second Judicial District Court, County of Bernalillo, which is entitled *Bank of America National Trust and Savings Association v. Albuquerque Allsuite Associates and John A. Rogers et al.,* CV–95–

09776 [the "State Court Action"]. According to the complaint in the State Court Action, Bank of America National Trust and Savings Association ["Bank of America"] seeks to foreclose on a mortgage given by Rogers on certain real estate located in Albuquerque, New Mexico. *Id.* Compl. ¶ 12 (Dow Aff.Ex. B). This action is noteworthy because at a hearing held therein on January 2, 1996, Hayward Taylor, the president of 5–Star, admitted under oath that 5–Star is not in possession of the note being sued upon in the present action and that it filed its complaint in this action without possessing or holding said note. *Id.* Dow Aff.Ex. A, at 22. The plaintiff has not disputed the authenticity of the transcript containing said admission, which was attached by the defendants as an exhibit in support of their motion to dismiss, or defendants' description of who Mr. Taylor is and the factual significance of his testimony.[4] Rather, plaintiff's contentions focus instead upon the legal ramifications attending 5–Star's lack of actual physical possession of the note in question.

█ The issue arises as to whether it is appropriate for this Court to consider Taylor's statement at the hearing in the State Court Action for the truth of the matter asserted, to wit, that plaintiff lacks actual physical possession of the note in question. This concern arises because, if on a motion pursuant to Fed.R.Civ.P. 12(b)(6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).

█ When presented with a motion to dismiss, this Court "is permitted to take judicial notice of matters of public record," *Clarry v. United States,* 891 F.Supp. 105, 109 (E.D.N.Y.1995), *aff'd,* 85 F.3d 1041 (2d Cir. 1996), including "the fact of such litigation and related filings." *City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F.Supp. 1273, 1279 (E.D.N.Y.1995); *see Marshall County*

---

**4.** In addition, the plaintiff did not address these issues at oral argument.

*Health Care Auth. v. Shalala,* 988 F.2d 1221, 1222 (D.C.Cir.1993). Judicial notice, however, generally does not extend to the truth of the matter asserted in the other litigation. *See City of Amsterdam,* 882 F.Supp. at 1278–79. This is consistent with Fed.R.Evid. 201(b) which provides, in pertinent part, that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Further, as a safeguard against a court's improvident application of judicial notice, Fed.R.Evid. 201(e) provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." Fed.R.Evid. 201(e). Rule 201, however, does not specifically address the circumstances of the case at bar wherein plaintiff's principal has made a critical admission in another judicial proceeding that bears substantially upon the legal sufficiency of its complaint in the present action, and the plaintiff, upon adequate notice, neither has contested the defendants' factual characterization of its principal's admission nor has sought to convert defendants' motion to dismiss into a motion for summary judgment.

Applying these principles to the unique circumstances presented in the case at bar, the Court regards it to be appropriate to consider Taylor's admission for the truth of the matter asserted—i.e., 5–Star's failure to possess the note in question at all relevant times—and that such may be considered by the Court without converting defendants' motion to dismiss into a motion for summary judgment. In reaching this determination, the Court finds that plaintiff had sufficient notice of the defendants' intention that this Court take judicial notice of its principal's admission in the State Court Action, and the factual significance that the defendants sought to attach to this admission. In view of plaintiff's failure to object, and *moreover in the absence of any allegation within its complaint that plaintiff holds the promissory*

*note in question,* the Court concludes, for purposes of construing the complaint, that plaintiff does not allege actual physical possession of the promissory note that is secured by the mortgage upon which it seeks to foreclose. As subsequently will be discussed, this determination, in view of the allegations of plaintiff's complaint, holds considerable significance in leading the Court to dismiss the complaint. Nevertheless, consistent with Fed.R.Evid. 201(e), the Court shall not regard this finding in respect of the present complaint to constitute "the law of the case," and any disagreement with the taking of said judicial notice may be addressed by the plaintiff in an amended complaint. *See also O'Brien v. DiGrazia,* 544 F.2d 543, 546 n. 3 (1st Cir.1976) (An omission of ultimate fact regarding a pivotal element of a pleader's claim justifies the court to assume the non-existence of the operative fact.), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *Ledesma for Ledesma v. Dillard Dep't Stores, Inc.,* 818 F.Supp. 983, 984 (N.D.Tex.1993) (same).

### B. *Analysis of Rule 12(b)(6) Motion to Dismiss*

■ In support of their motion to dismiss plaintiff's complaint, defendants Rogers and Allsuite contend that under New Mexico law an assignment of a mortgage without the note is a nullity. Although recognizing that the New Mexico Supreme Court has not spoken on this issue, the defendants assert that this Court, sitting in diversity jurisdiction, in predicting New Mexico law should follow the decisive weight of authority which would regard plaintiff's failure to allege that it possesses the underlying promissory note to be fatal to the legal sufficiency of the complaint.

■ This Court must apply New Mexico substantive law because the Modification Agreement provides that New Mexico law will govern any dispute arising thereunder. *See* Compl.Ex. E ¶ 27, at 23. In this regard, "[f]ederal courts sitting in diversity cases will, of course, apply the [choice-of-law rules] of the forum State on outcome determinative issues." *Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir.1994) (citing

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Further, "[i]t is well established that the court will honor the parties' choice of law where there is a reasonable basis for the choice or the chosen State has some relation to the agreement." *Depositors Trust Co. v. Hudson Gen. Corp.,* 485 F.Supp. 1355, 1359 (E.D.N.Y. 1980). Thus, because New York courts would apply New Mexico law in determining the rights of the parties to the present dispute, this Court must predict how the Supreme Court of New Mexico would rule on the substantive issues presented in the defendants' motion to dismiss. *See Travelers,* 14 F.3d at 119.

The task of predicting New Mexico law is rendered somewhat more difficult here because, as the parties agree, the Supreme Court of New Mexico has not addressed the precise issue of whether a mortgage may be foreclosed upon when the holder of such mortgage is not in possession of the underlying note. In addition, it does not appear that the lower courts of New Mexico have addressed this issue either.

▇▇ In ascertaining a particular state's substantive law when the highest court of that state has not spoken, a federal court should "consider relevant cases from jurisdictions other than [the subject state] in an effort to predict 'what would be the decision of reasonable intelligent lawyers,' sitting as judges of the highest ... court [of that state], and fully conversant with [such state's] jurisprudence." *Id.*

Although the New Mexico Supreme Court has not ruled on this issue, the decisive weight of authority within other jurisdictions holds that an assignment of a mortgage without the underlying debt is a nullity, and therefore unenforceable, unless the promissory note in question has been lost or destroyed, or the original contracting parties intended the mortgage to be independently enforceable. *See* 55 Am.Jur.2d: Mortgages § 1283, at 1038–39 (1971); 59 C.J.S. Mortgages § 356, at 504–07 (1949); *Federal Deposit Ins. Corp. v. Bracero & Rivera, Inc.,* 895 F.2d 824, 827 (1st Cir.1990) (applying Puerto Rico law); *Brunn v. Wichser,* 75 F.2d 25, 27 (3d Cir.1934) (applying Pennsylvania law); *In re Leisure Time Sports, Inc.,* 194 B.R. 859, 861 (9th Cir. BAP 1996) (applying California law); *United States v. Freidus,* 769 F.Supp. 1266, 1277–78 (S.D.N.Y.1991) (applying New York law); *In re BNT Terminals, Inc.,* 125 B.R. 963, 970–71 (Bankr. N.D.Ill.1990) (applying Illinois and Nebraska law); *In re Hurricane Resort Co.,* 30 B.R. 258, 260–61 (Bankr.S.D.Fla.1983) (applying Florida law); *South Carolina Nat'l Bank v. Halter,* 293 S.C. 121, 359 S.E.2d 74, 77 (1987) (applying South Carolina law); *Barton v. Perryman,* 265 Ark. 228, 577 S.W.2d 596, 600 (1979) (applying Arkansas law); *Rockford Trust Co. v. Purtell,* 183 Ark. 918, 39 S.W.2d 733, 736 (1931) (applying Arkansas law); *Kluge v. Fugazy,* 145 A.D.2d 537, 536 N.Y.S.2d 92, 93 (2d Dep't 1988) (applying New York law); *Beak v. Walts,* 266 A.D. 900, 42 N.Y.S.2d 652, 653 (4th Dep't 1943) (per curiam) (applying New York law); *Merritt v. Bartholick,* 36 N.Y. 44, 51 (1867) (applying New York law); *see also Kawai Am. Corp. v. Hilton,* 205 A.D.2d 1021, 613 N.Y.S.2d 989, 991 (3d Dep't 1994) (applying New York law) (exception where intent of the original contracting parties overrode the default rule), *leave to appeal dismissed,* 87 N.Y.2d 968, 642 N.Y.S.2d 196, 664 N.E.2d 1259 (1996); *Felin Assocs. v. Rogers,* 38 A.D.2d 6, 326 N.Y.S.2d 413, 415 (1st Dep't 1971) (applying New York law) (exception where note was lost).

The reasoning behind the default rule was stated in *In re Hurricane Resort Co.,* 30 B.R. 258 (Bankr.S.D.Fla.1983): "To allow the assignee of a security interest to enforce the security agreement would expose the obligor to a double liability, since a holder in due course of the promissory note clearly is entitled to recover from the obligor." *Id.* at 261. Thus, the default rule gives effect to the likely intent of the contracting parties which would protect the maker of a note, who also issues a mortgage, from being exposed to liability twice in respect of the same underlying debt. The consequences of a separation of a mortgage from the note is amply illustrated in the case at bar wherein the pendency of two separate actions in respect of the same underlying obligation threatens Rogers and Allsuite with double liability; a result that probably was not intended at the

time that the original bargains culminating in the issuance of these respective instruments were struck. At the very least, such intent of the contracting parties to the Modification Agreement has not been pleaded in the complaint at bar.[5]

Contrary to the view expressed by the defendants in an apparent attempt to anticipate plaintiff's argument, this Court regards New York law to be consistent with the majority default rule that an assignment of a mortgage unaccompanied by the note that it secures is a nullity, absent a contrary intent of the original contracting parties. In this regard, the New York Court of Appeals has held that

> a transfer of the mortgage, without the debt, is a nullity, and no interest is acquired by it.... [T]he legal maxim is, *the incident shall pass by the grant of the principal, but not the principal, by the grant of the incident.* So that, unless we are authorized to say, that such was the intent of the parties, we cannot hold that it did.

*Merritt v. Bartholick,* 36 N.Y. 44, 51 (1867) (emphasis in original); *see Freidus,* 769 F.Supp. at 1277–78; *Kluge,* 536 N.Y.S.2d at 93; *Felin Assocs.,* 326 N.Y.S.2d at 415; *Beak,* 42 N.Y.S.2d at 653.

Further, the Court regards those New York cases which defendants assert to depart from this principle to fall within the rubric of construing the intent of the original contracting parties in light of the unique factual circumstances presented therein. For example, in *Felin Assocs. v. Rogers,* 38 A.D.2d 6, 326 N.Y.S.2d 413 (1st Dep't 1971), an assignment of the note along with the mortgage was an impossibility because the original note had been lost. The assignor instead issued a replacement note to the assignee. *See id.,* 326 N.Y.S.2d at 414. The court based its holding—that physical delivery of the original note was not necessary for the subject mortgage to be enforceable, in compliance with the New York Real Property Law—on the ground that "there [was] no doubt that there [was] an intent to so transfer the interest in the note and mortgage." *Id.,* 326 N.Y.S.2d at 415. In explicating the limited scope of its analysis, the *Felin* court stated, "we do agree with the plaintiff ... [that] in ordinary circumstances the mortgagee should also be required to transfer and deliver the mortgage and the original bond or note." *Id.*

The defendant also cites *Kawai America Corp. v. Hilton,* 205 A.D.2d 1021, 613 N.Y.S.2d 989 (3d Dep't 1994), *leave to appeal dismissed,* 87 N.Y.2d 968, 642 N.Y.S.2d 196, 664 N.E.2d 1259 (1996), as authority that New York does not adhere to the majority rule. That case likewise is distinguishable from the facts alleged in the complaint at bar. In *Kawai,* the defendant executed a series of one-year agreements from 1984 through 1990 in connection with the shipment of merchandise. *See id.,* 613 N.Y.S.2d at 990–91. In 1989, certain of the defendants issued a mortgage as additional security for a shipment of merchandise valued in excess of $50,000. *See id.* 613 N.Y.S.2d at 991. The defendants claimed that a promissory note was never issued to the plaintiff as a result of disputes that had arisen between the parties. *See id.* The court found the mortgage to be enforceable, holding that "[w]hen an obligation secured by a mortgage exists aside from the note or bond, the mortgage is not invalidated by the invalidity of the note or bond manifesting the debt." *Id.* The circumstances at issue in *Kawai* present a substantially different situation from the successive-assignment scenario in the case at bar. *See id.* This conclusion obtains because, in *Kawai,* the mortgage was held by the same party that was a promisee of a commercial transaction for the shipment of goods, the enforceability of which was independently determinable without reference to a promissory note. *See id.*

---

**5.** The Court observes that a determination that the mortgage at issue, having been separated from the underlying promissory note, may be unenforceable would not leave the plaintiff in possession of a worthless instrument. This conclusion obtains because the plaintiff presumably can sell the mortgage to the holder of the underlying obligation. The plaintiff also can purchase the underlying obligation from the holder of the note. In that case, plaintiff, as holder of both the mortgage and the note, could foreclose on the mortgage on the New York Property.

The plaintiff does not disagree with the above analysis of the law but contends that its status as holder of the note in question may be construed from its allegation in the complaint that the RTC assigned its interest in and to the mortgage in question to 5–Star by Assignment of Mortgage dated January 11, 1995. *See* Compl. ¶ 31. Specifically, in its complaint, 5–Star cited Exhibit F thereof for reference to such assignment. *See id.* That exhibit, entitled "Assignment of Mortgage or Beneficial Interest in Deed of Trust" [the "Assignment"], includes the following language:

> For value received, the undersigned assignor ... does hereby grant, bargain, sell, assign, transfer and convey to the following assignee: Five Star Management ... all of Assignor's right, title and interest in and to that certain Mortgage ... which encumbers the real property ... *together with all the indebtedness currently due and to become due under the terms of any promissory note or evidence of indebtedness secured thereby.*

Compl.Ex. F, at 1 (emphasis added). According to the plaintiff, because the Assignment explicitly states that all the indebtedness secured thereby was assigned along with the mortgage, "5–Star clearly has alleged its possession of the Note." Pl.'s Mem. of Law, at 5.

The chief difficulty with the plaintiff's argument is that the factual inference which it requests the Court to draw—that it has possession of the Note—is contradicted by its principal's admission in a judicial proceeding of which this Court has taken judicial notice. The Court therefore regards it to be inappropriate to draw this inference in favor of the plaintiff on the present motion to dismiss absent an express allegation in the complaint, made in accordance with Fed.R.Civ.P. 11, that supports it. Moreover, the complaint does not allege that the promissory note in

question has been lost or destroyed so as to prevent Rogers from being exposed to double liability in respect of the same underlying obligation. *See Felin,* 326 N.Y.S.2d at 415 (where original note was lost and therefore rendered impossible to negotiate, mortgage securing such note was enforceable). Furthermore, the complaint does not allege that the original contracting parties, in entering into the Modification Agreement in 1991, specifically intended to expose Rogers and Allsuite to double liability, contrary to the default rule, in the event that different parties came into possession of the note and the mortgage in question. In view of these circumstances, the Court regards the better route to be to dismiss plaintiff's complaint against defendants Rogers and Allsuite with leave to file an amended complaint. Such amended complaint must be served and filed within 45 days of the date that this Memorandum and Order is docketed, and should give proper regard to both the analysis stated herein and the parol evidence rule.[6]

### CONCLUSION

For the foregoing reasons, the Court enters the following orders in this action:

1. Defendant Allsuite's motion to dismiss this action against it for lack of personal jurisdiction is DENIED.

2. Defendants Rogers' and Allsuite's motion to dismiss the complaint for failure to state a claim is GRANTED. Said dismissal shall be with leave to file an amended complaint, which must be served and filed within 45 days of the date that this Memorandum and Order is docketed.

3. In the event that plaintiff does not file an amended complaint within the time parameters established by the Court, plaintiff shall promptly notify the Court in writing of its decision to that effect and state whether it wishes to continue this action against the other named defendants who have not joined

**6.** In view of the Court's rulings herein, it is unnecessary for it to reach the defendants' alternative application to transfer this case to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1404(a). For completeness of record, however, the Court notes that said application appears to be unwarranted because the real property that is the sub-

ject of this mortgage-foreclosure action is located in New York, and moreover because the declaratory-judgment action commenced by Rogers and Allsuite against 5–Star in the United States District Court for the District of New Mexico has been transferred to the Eastern District of New York pursuant to 28 U.S.C. § 1631.

in the subject motions to dismiss. Failure to notify the Court in accordance herewith will result in the dismissal of this action in its entirety without prejudice, as against all defendants, for want of prosecution.

SO ORDERED.