**WORLD WRESTLING ENTERTAIN-MENT, INC., Plaintiff–Appellant,**

**v.**

**JAKKS PACIFIC, INC., Jakks Pacific (H.K.), Ltd., Road Champs Ltd., THQ, Inc., THQ/Jakks Pacific LLC, Bell Licensing, LLC, James Bell, Jack Friedman, Stephen Berman, Joel Bennett, and Brian Farrell, Defendants–Appellees,**

**Stanley Shenker and Associates, Inc., Stanley Shenker, and The Joint Venture of THQ, Inc., Defendants.**

**No. 08–0118–cv.**

United States Court of Appeals, Second Circuit.

May 19, 2009.

---

Jerry S. McDevitt (Peter N. Flocos, Curtis B. Krasik, Amy K. Barrette, J. Nicholas Ranjan, on the brief), Kirkpatrick & Lockhart Preston Gates Ellis LLP, New York, N.Y. and Pittsburgh, PA, for Appellant.

Jonathan J. Lerner, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, (Michael H. Gruenglas, Maura Barry Grinalds, and Robert A. Fumerton, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, and Murray L. Skala and Jonathan D. Honig, Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine LLP, New York, NY, on the brief) for Jakks Pacific, Inc., Jakks Pacific (H.K.) Ltd., Road Champs, Ltd., Jack Friedman, Steven Berman, and Joel Bennett.

Steven A. Marenberg, Irell & Manella LLP, Los Angeles, CA (Steven M. Bierman, Issac S. Greaney, Sidley Austin LLP, New York, NY, and Charles E. Elder, Irell & Manella LLP, Los Angeles, CA, on the brief) for THQ, Inc. and Brian Farrell.

Richard Schaeffer (Bruce Handler and Cynthia L. Ebbs, on the brief), Dornbush Schaeffer Strongin & Venaglia, LLP, New York, NY, for THQ/Jakks Pacific LLC.

PRESENT: RALPH K. WINTER, JOSÉ A. CABRANES, and SONIA SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

Plaintiff-appellant World Wrestling Entertainment, Inc. appeals the dismissal of two sets of claims that it brought against defendants, who include a former employee (James Bell), a former licensing agent (Stanley Shenker), and several business partners: (1) claims under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1962(c) and (d), and 1964(c) ("RICO"), and (2) antitrust claims brought pursuant to the Sherman Act, 15 U.S.C.

§ 1; *see also* 15 U.S.C. § 15 (the "Clayton Act") (authorizing antitrust suits by a person injured by a monopoly or similarly restrictive device). Before the District Court, plaintiff alleged a variety of other claims—including state law claims for commercial bribery and fraudulent inducement, and a federal claim for commercial bribery in violation of the Robinson–Patman Act, 15 U.S.C. § 13(c)—that are not before us on this appeal. We assume the parties' familiarity with the underlying facts and procedural history of this case.

We review *de novo* a district court's order granting a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *See, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir.2008).

 Having accepted all of plaintiff's allegations as true, we conclude that plaintiff's RICO claims—which were filed in October 2004—are time-barred under a four-year statute of limitations that began running in mid–1998. A four-year statute of limitations "begins to run [on a RICO claim] when the plaintiff discovers—or should have reasonably discovered—the alleged injury." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 (2d Cir.2008). The RICO statute of limitations—which is borrowed from the statute of limitations in the Clayton Act, *see* 15 U.S.C. § 15b; *see also Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)—runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were "storm warnings" that should have prompted an inquiry, *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 427 (2d Cir.2008) (describing the "storm warnings" rule as "well-settled law in this Circuit").

In this case, the District Court identified at least four "storm warnings" that put plaintiff on inquiry notice of a possible RICO claim by mid–1998 at the latest. *See World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F.Supp.2d 486, 528–29 (S.D.N.Y.2007). First and most important, in March 1998 plaintiff received a complaint from an incumbent licensee that its bid on a license renewal was not being seriously considered. *See* J.A. 147–48 (Am.Compl.¶ 109) ("Acclaim went over Bell's head and complained to [plaintiff's] senior management . . . that it was not being permitted to submit a renewal proposal, [and] Acclaim was told it could do so."). Second, another licensee complained by letter in January 1997 that plaintiff had granted a license to defendant Jakks Pacific, Inc. that conflicted with plaintiff's prior agreement with that licensee. *See* J.A. 139 (Am.Compl.¶ 70) ("Playmates accused [plaintiff] of not acting in good faith to allow two competing companies to market such similar toy lines."). Third, plaintiff agreed to several licenses with Jakks in 1997 and 1998 that were "well below [the] prevailing market rates," J.A. 148 (Am.Compl.¶ 110), even though the marketplace for video game licenses was "intense," J.A. 146 (Am.Compl.¶ 103). Fourth and finally, defendant Jakks inexplicably bid against itself when it submitted a joint bid with defendant THQ, Inc. for a videogame license, after having been granted the license by plaintiff's management on favorable terms just six weeks earlier. *See* J.A. 149 (Am.Compl.¶ 114) ("On April 8, 1998, [plaintiff] approved the deal memo . . . to grant the videogame license to Jakks."); J.A. 158 (Am. Compl.¶ 157) ("On June 23, 1998, [plaintiff] executed a videogame license agreement with THQ/Jakks effective as of June 10, 1998.").

In light of these "storm warnings," especially the complaint by the incumbent licensee, we are unmoved by plaintiff's argument that defendants' activities were fraudulently concealed during the statute of limitations period. *See Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36–37 (2d Cir.2002) (recognizing that equitable tolling of a RICO statute of limitations period may occur where defendants engaged in fraudulent concealment). At best, plaintiff points to a prior litigation brought by Shenker in Connecticut state court, in which the trial judge found that Shenker "deliberately conceal[ed] and/or otherwise refus[ed] to produce critical documents and repeatedly committ[ed] perjury during his deposition testimony." *Stanley Shenker & Assocs., Inc. v. World Wrestling Fed'n Entm't, Inc.*, 48 Conn.Supp. 357, 358, 844 A.2d 964 (Conn.Super.Ct.2003). Nothing in that opinion indicates that Shenker—who was one of 10 distinct defendants named in the Amended Complaint—engaged in discovery abuses that were aimed at, much less had the effect of, concealing any of the "storm warnings" we have listed above. Accordingly, we agree with the District Court that plaintiff has "fail[ed] to cite anything in its lengthy Amended Complaint that remotely demonstrates due diligence at any point during the granting of the licenses, let alone that it exercised due diligence throughout the period to be tolled." *World Wrestling Entm't*, 530 F.Supp.2d at 529.

■ For substantially similar reasons, we conclude that plaintiff's antitrust claims were time-barred.[1] The statute of limita-

tions in a private anti-trust suit is four years, *see* 15 U.S.C. § 15b ("Any action to enforce any cause of action under [15 U.S.C. § 15] shall be forever barred unless commenced within four years after the cause of action accrued."), beginning "when a defendant commits an act that injures a plaintiff's business", *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). In the instant case, the act that allegedly injured plaintiff's business occurred on June 23, 1998, when plaintiff executed a videogame license with Jakks and THQ. *See* J.A. 158 (Am.Compl.¶ 157); J.A. 230 (Am.Compl.¶ 270) ("[Plaintiff] was injured in its business . . . by the conspiracy to rig the videogame license bid and to allocate the license to THQ/Jakks."). Plaintiff first alleged antitrust claims in its Amended Complaint, which was filed in March 2005—years after the statute of limitations had expired. Although tolling is sometimes available for an antitrust claim, *see Zenith Radio Corp.*, 401 U.S. at 338, 91 S.Ct. 795, it does not apply in this case because the joint nature of the THQ/Jakks bid was open and notorious, and a reasonable person—especially a sophisticated party such as plaintiff—would have investigated and brought suit within the statute of limitations period. *See Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996) (concluding, in a suit brought under the Clayton Act, that equitable tolling did not apply where a "delay [in filing suit] was excessive and occasioned by plaintiffs' lack of diligence," and where "[a] reasonable

---

1. As indicated in the District Court's Opinion and Order of March 21, 2006, defendants argued that plaintiff's antitrust claims were time-barred in their motions to dismiss, but the Court did not reach the statute of limitations issue because it found another argument—that plaintiff had failed to allege a cognizable antitrust injury—persuasive. *See*

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F.Supp.2d 484, 515 (S.D.N.Y.2006). Because our review is *de novo*, we choose to affirm on the basis of the statute of limitations alone. *See Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir.1995) ("We are free to affirm on any ground that finds support in the record.").

plaintiff would have [ ]turned to federal court sooner").

We have considered plaintiff's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.